# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                          Plaintiff,<br>  vs.<br>MELISSA RESENDEZ-CEBALLOS,<br>                          Defendant. | CASE NO. 06cr63WQH<br>             09cv835WQH<br><br>ORDER |

HAYES, Judge:

The matter before the Court is the motion to vacate, correct or set aside sentence pursuant to 28 U.S.C. Section 2255 filed by Defendant Melissa Resendez-Ceballos. (Doc. # 59).

## FACTS

On December 18, 2005, Defendant was detained at the Port of Entry at San Ysidro, California after a narcotics detector dog alerted to the vehicle she was driving. Subsequent investigation revealed packaging containing 9.19 kilograms of cocaine and 3.73 kilograms of methamphetamine concealed in a non-factory compartment installed in the vehicle. The drugs were concealed behind the rear seat of the vehicle and surrounded by laundry soap emitting a powerful odor, which was out of place and aroused suspicion. Defendant gave inconsistent statements regarding the ownership of the car at primary and secondary.

On January 11, 2006, Defendant was charged in a two count indictment with importation of approximately 10 kilograms of cocaine and 3.73 kilograms of

1 methamphetamine in violation of 21 U.S.C. §§ 952 and 960 and possession with intent to
2 distribute approximately 10 kilograms of cocaine and 3.73 kilograms of methamphetamine in
3 violation of 21 U.S.C. § 841(a)(1). The charges in the indictment carried a minimum
4 mandatory sentence of ten years and a maximum sentence of life imprisonment. The guideline
5 sentencing range applicable to the quantities of narcotics charged in the indictment resulted
6 in a base offense level of 38 and a guideline range of 235-293 months imprisonment.

7 Prior to trial, the Assistant United States Attorney ("AUSA") offered the Defendant,
8 through her counsel, a proposed negotiated disposition. The AUSA proposed that the
9 Defendant would receive a fixed term of imprisonment of 48 months under Fed. R. Crim. P.
10 11(c)(1)(C) in exchange for her plea of guilty. Defendant rejected the plea offer.

11 On October 3, 2009, trial commenced. The government presented witnesses and
12 exhibits. Defendant testified in her case that a friend had asked her to drive the vehicle across
13 the border and that she did not know that there were drugs in the vehicle.

14 On October 4, 2006, the jury deliberated for approximately two hours and returned a
15 verdict of guilty on both counts in the indictment.

16 On December 21, 2006, the Court held a sentencing hearing. The Court found that the
17 base offense level was 38 under U.S.S.G. § 2D1.1(c)(1), and denied an adjustment for minor
18 role under United States Sentencing Guidelines § 3B1.2. The Court found that safety valve did
19 not apply. With a total offense level of 38 and Criminal History Category of I, the advisory
20 sentencing guideline range was 235-293 months. The Court sentenced the Defendant to serve
21 a period of 168 months imprisonment on each count to run concurrently. After full
22 consideration of all factors set forth in 18 U.S.C. § 3553, the Court found that 168 months was
23 a reasonable sentence.

24 Defendant filed an appeal in the Court of Appeals for the Ninth Circuit asserting that
25 the prosecutor's closing argument constituted misconduct.

26 On October 24, 2007, the Court of Appeals affirmed the judgment of the district court.
27 On April 20, 2009, Defendant filed a motion to vacate, set aside or correct under 28
28 U.S.C. § 2255 on the grounds that she was deprived of the effective assistance of counsel

during plea negotiations.[1] Defendant asserted that Defense counsel misadvised her of the risks and benefits of proceeding to trial and threatened to withdraw as her counsel if she accepted the plea. Defendant asserted that she was prepared to accept a plea offer of 48 months and that she declined the offer based upon the misadvice and coercion of her Defense counsel.

In her Section 2255 motion, Defendant stated, under penalty of perjury, that she was prepared to accept the plea offer if her counsel advised her to do so, and declined the offer as a result of her discussions with counsel. Defendant stated that her counsel disparaged the benefits of the plea offer, stating that he was "obligated to show it to [her]" and it was a mere "crust of bread." (Doc. # 59 at 12). Defendant stated that her counsel repeatedly assured her that she would win at trial describing the case as a "slam dunk"; a "sure thing"; and the plea offer of 48 months as "ridiculous." *Id.* at 13. Defendant stated that Defense counsel told her that the plea offer contemplated a debrief pursuant to the "safety valve" and stated that "if they don't believe what you say, you will get more time than ever." *Id.* at 12. Defense counsel told the Defendant "I don't represent rats" and "if you want to do this, you'll have to get a new lawyer." *Id.* Defendant stated that her counsel never informed her that she would be eligible for appointment of a replacement counsel. Defendant stated that she believed she would be "without *any* lawyer" if she accepted the plea offer and cooperated with the government or that her counsel's representation would be grudging and not in her interest. *Id.*

Defendant stated in the Section 2255 motion that her counsel told her that "the most" time she would serve in prison even if she lost her case at trial was ten years. *Id.* at 14. Defendant stated in the Section 2255 motion that "[Defense counsel] did not review with her the level 38 Guidelines exposure, nor explain to her the possibility that her denial at trial of all criminality might lead (as it did) to the Court's refusal to award her role-reduction, and therefore a lesser sentence." *Id.*

On April 24, 2009, this Court filed a scheduling order which required that the Plaintiff United States file a response including "all pertinent documents, orders and transcripts relevant

---

[1] The motion was timely filed. The Court of Appeals denied the petition for rehearing on January 22, 2008. The judgment was final when the time for seeking review in the Supreme Court of the United States expired, whether or not review is actually sought.

to this motion." (Doc. # 60).

On May 29, 2009, Plaintiff United States filed a memorandum in opposition to Defendant's Section 2255 motion. (Doc. # 61). Plaintiff's memorandum stated in part: "[t]his opposition is based upon the attached memorandum of points and authorities, the files and records of this case, and any evidence or argument that may be presented at any hearing on this matter." *Id.* at 1. Plaintiff United States submitted no evidence to supplement the record. Plaintiff United States asserted that Defendant's conclusory allegations regarding Defense counsel are contradicted by the law and the record of this case and that the motion to vacate should be denied without a hearing.

On July 9, 2009, after reviewing the record, the Court filed an order stating in part:

> When considering a § 2255 petition, the district court shall hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. §2255(b). The Court has reviewed the pleadings and will require the parties to file any and all relevant evidence in the form of declarations and exhibits prior to determining whether an evidentiary hearing is required to resolve the claim of ineffective assistance of counsel.
> IT IS HEREBY ORDERED that
> 1) Defendant shall file any and all relevant evidence in the form of declarations and exhibits in support of the motion to vacate by August 17, 2009 and
> 2) the United States shall file any and all relevant evidence in the form of declarations and exhibits in opposition to the motion to vacate by September 24, 2009.

(Doc. # 65 at 2-3).

On August 15, 2009, Defendant supplemented the evidence provided with her Section 2255 motion with the declarations of Carl Arnold, the AUSA prosecuting the case against the Defendant; Dora Resendez, Defendant's mother; Sam Aaron Resendez, Defendant's brother; Sam V. Resendez, Defendant's father; and Fernando Tafoya, Defendant's friend. Arnold stated, under penalty of perjury, that he offered the 48 month proposed negotiated disposition to Defendant through her counsel; that he carefully reviewed the case facts and reached the conclusion that the Defendant would almost inevitably lose at trial and would be subject to a lengthy penalty range; and that there were numerous contextual facts inconsistent with any reasonable inference other than that Defendant was a drug courier. Arnold stated that he examined the Defendant's background and concluded that her instant criminality appeared to

be aberrant and that the interests of justice would be served by extending the 48 months offer. Arnold stated that he was informed by Defense counsel that the offer was rejected and that Defense counsel expressed an opinion that the Government's case was weak and the Defendant's case was strong. (Doc. # 66 at 3-6).

Dora Resendez, Defendant's mother, stated under penalty of perjury that she spoke with Defense counsel on a number of occasions prior to her daughter's trial while accompanying her daughter to consult with her counsel; that Defense counsel expressed in various ways the prediction that her daughter was virtually certain to win her case ("slam dunk" and "sure thing"); and that Defense counsel stated that her daughter's testimony alone would probably convince a jury of her innocence because she was "clean cut and attractive and had no record." *Id.* at 10.  Dora Resendez stated in part:

> At an office meeting some time before the trial date, [Defense counsel] emerged from his conference with my daughter to inform my husband and me, in my daughter's presence, that the Government had offered a 'deal' to my daughter. According to [Defense counsel], the deal would be that my daughter would serve forty-eight months in prison. He expressed a belief that my daughter should reject the deal because she was certain to win at trial, and therefore should not have to do *any* time. He further explained that the most she could get would be ten years. At this point, my daughter added that the deal would force her to be an informant (the word used was 'rat'), and that [Defense counsel] would not represent 'rats.' At this point, [Defense counsel] nodded and said 'yes that is true.'
>
> ... [M]y daughter told my husband and me that she thoroughly trusted [Defense counsel] and would follow his advice, including his advice not to take the 'deal.'

*Id.* at 10-11.

Sam Resendez, Defendant's brother, stated under penalty of perjury that "[Defense counsel] told [him] that he wins ninety percent (90%) of his cases. He assured me that there was no need for my family to go to the expense of hiring a private lawyer, since they could get excellent service for free through the Public Defender. He told me then, as he repeatedly told me afterwards, that 'everything will be all right.'" *Id.* at 15.

Sam V. Resendez, Defendant's father, stated under penalty of perjury that "[Defense counsel] expressed, in various ways, a prediction that my daughter was virtually certain to win her case at trial. He used phrases like 'slam dunk' and 'sure thing' to describe the defense's case and the outcome." *Id.* at 19. Sam V. Resendez stated:

> At an office meeting some time before the trial, [Defense counsel] emerged from his conference with my daughter to inform my wife and me that the Government had offered a 'deal' to my daughter. He told my wife and me ... that he believed that my daughter should reject the deal .... He told us that the reason for his opinion was that my daughter was extremely likely to prevail. ... [Defense counsel] was extremely dismissive of the 'deal' and told us that it would be simply wrong for my daughter to take a deal that would involve four years imprisonment when she was certain to prevail at trial.

*Id.* at 20.

Fernando Tafoya, a personal friend of the Defendant, stated under penalty of perjury that he contacted [Defense counsel] after the trial "to conduct a *de facto* 'post mortem' of what had happened at trial." *Id.* at 24. Tafoya stated:

> I asked [Defense counsel] why [Defendant] did not accept what I understood to have been a Government proffered negotiated disposition whereby she would have served four years imprisonment instead of the sixteen years actually received. I do not recall the specific words [Defense counsel] used in response, but the gist of his answer was that he personally advised [Defendant] not to take the deal because she had a strong defense and would likely win at trial. [Defense counsel] also told me that he felt [Defendant's] maximum 'exposure' in the case was, in any event, only ten years imprisonment (although he conceded, of course, that her actual sentence turned out to be longer than that).

*Id.* at 25.

The Government had been ordered by the Court to "file any and all relevant evidence in the form of declarations and exhibits in opposition to the motion to vacate by September 24, 2009," however, the Government submitted no evidence contradicting or supplementing any fact submitted by the defense. (Doc. # 65 at 3).

On November 13, 2009, the Court held argument on the motion. At the start of the hearing, the Government requested leave of the Court to file the declaration of Defense counsel at the time of the trial. Defendant opposed the Government's request to supplement the record on the grounds that the request by the Government was not timely. The Court heard argument on Defendant's motion and ordered that the Government file any "motion for request for late filing of declaration along with the proposed declaration by 11/30/2009." (Doc. # 70). The Government did not submit a motion or proposed declaration.

## CONTENTIONS OF PARTIES

Defendant moves the Court to vacate, set aside, or correct her sentence on the grounds that she was denied effective assistance of counsel. Defendant asserts that she rejected the plea

offer based upon the misrepresentations by Defense counsel regarding the plea offer, the risks of imprisonment after trial, and the benefits of proceeding to trial; combined with the threat by Defense counsel to withdraw if she accepted the plea offer.

offer based upon the misrepresentations by Defense counsel regarding the plea offer, the risks of imprisonment after trial, and the benefits of proceeding to trial; combined with the threat by Defense counsel to withdraw if she accepted the plea offer.

Plaintiff United States asserts that the Defense counsel's optimism of winning at trial does not fall below an objective standard of reasonableness. The United States asserts: "[i]f [Defendant] was advised of the maximum sentence [of life imprisonment], the 168 months she received was within the range of possibilities and she would have known that. ... Nor would the fact of him telling her that he would not represent her if she cooperated with the Government constitute ineffective assistance of counsel." (Doc. # 61 at 4).

## ANALYSIS

28 U.S.C. § 2255 provides:

> A prisoner under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.
>
> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of facts and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set aside the judgment and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

28 U.S.C. § 2255(a) and (b).

"Case law and the Rules Governing Habeas Corpus cases recognize that courts may expand the record for considering section 2255 motions with discovery and documentary evidence." *Watts v. United States*, 841 F.2d 275, 277 (9th Cir. 1988) (citing *Blackledge v. Alliston,* 431 U.S. 63, 81-83 (1977)). Rule 7 of the Rules Governing Section 2255 Proceedings for the United States District Court provides:

> (a) **In General.** If the motion is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the motion.

> The judge may require that these materials be authenticated.
> (b) **Types of Materials.** The materials that may be required include letters predating the filing of the motion, documents, exhibits, and answers under oath to written interrogatories propounded by the judge. Affidavits also may be submitted and considered as part of the record.
> (c) **Review by the Opposing Party.** The judge must give the party against whom the additional materials are offered an opportunity to admit or deny their correctness.

Rule 7 - Section 2255 Proceedings. "Decisions to hold hearings and conduct discovery in such cases are committed to the court's discretion." *Watts*, 841 F.2d at 277 (citing *Machibroda v. United States*, 368 U.S. 487, 495 (1962)).

In accordance with Rule 7, this Court entered an order on July 9, 2009 which stated in relevant part: "IT IS HEREBY ORDERED that 1) Defendant shall file any and all relevant evidence in the form of declarations and exhibits in support of the motion to vacate by August 17, 2009 and 2) the United States shall file any and all relevant evidence in the form of declarations and exhibits in opposition to the motion to vacate by September 24, 2009." (Doc. # 65 at 2-3). On August 15, 2009, Defendant submitted evidence to supplement her sworn statement in the Section 2255 motion. Plaintiff United States has submitted no evidence contradicting any facts submitted by Defendant in support of the motion to vacate her sentence.[2] On November 13, 2009, the Court granted the Government leave to request late filing of a declaration and the Government submitted no motion or declaration.

Plaintiff United States has been ordered at three stages in this proceeding to submit any and all relevant evidence. *See* Doc. # 60, 65, and 70. Based upon the record in this case, the Court concludes that there are no facts in dispute and an evidentiary hearing is not required.

**Standard for Ineffective Assistance of Counsel**

In order to prevail on a claim of ineffective assistance of counsel, Petitioner must show that representation of Defense counsel fell below an objective standard of reasonableness, and that any deficiencies in counsel's performance were prejudicial. *See Strickland v. Washington*, 466 U.S. 688, 690 (1984). In *Turner v. Calderon,* 281 F.3d 851 (9th Cir. 2002), the Court of Appeals for the Ninth Circuit explained that "[t]he Sixth Amendment guarantees

---

[2] In accordance with Rule 7(c), Plaintiff United States had the opportunity to admit or deny the evidence submitted by Defendant on August 15, 2009 and filed no response by September 24, 2009.

criminal defendants the constitutional right to be represented by counsel at all critical stages of the prosecution, including the plea proceedings. We have held that the decision to reject a plea bargain offer and plead not guilty is also a vitally important decision and a critical stage at which the right to effective assistance of counsel attaches. Thus, *Strickland*'s two-prong test applies to ineffectiveness claims arising from the plea process." *Id.* at 879. (quotations and citations omitted). Both deficient performance and prejudice are required before it can be said that a conviction or sentence resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable and thus in violation of the Sixth Amendment. *See United States v. Thomas*, 417 F.3d 1053, 1056 (9th Cir. 2005).

**Objective Standard of Reasonableness**

In order to show that counsel's representations fell below an objective standard of reasonableness, Defendant must identify "material, specific errors and omissions that fall outside the wide range of professionally competent assistance." *United States v. Molina*, 934 F.2d 1440, 1447 (9th Cir. 1991) (citation omitted). The inquiry is "whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Turner*, 281 F.3d at 879 (internal quotations omitted). In making this determination, the court applies a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance...." *Strickland*, 466 U.S. at 689. A deficient performance requires showing that "counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. "The Sixth Amendment recognizes the right to assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results." *Id.* at 685.  In *Turner*, the Court of Appeals stated:

> In *United States v. Blaylock*, [20 F.3d 1458 (9th Cir. 1994)], we held that counsel's 'failure to communicate the government's plea offer to his client constitute[d] unreasonable conduct under the prevailing professional standards.' ... The question whether counsel was deficient is more difficult where, as here, the client has been informed of the plea offer. A defendant has the right to make a reasonably informed decision whether to accept a plea offer. In *McMann v. Richardson*, the seminal decision on ineffectiveness of counsel in plea situations, the Court described the question as not whether 'counsel's advice was right or wrong, but ... whether that advice was within the range of competence demanded of attorneys in criminal cases.'

1  *Turner*, 281 F.3d at 880 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)); *see also*
2  *Nunes v. Mueller*, 350 F.3d 1045, 1054 (9th Cir. 2003) (factual scenario where "attorney gave
3  [defendant] the wrong information and advice about the state's plea offer" supports an
4  ineffective assistance claim); *Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir. 1986) ("[T]he gross
5  mischaracterization of the likely outcome..., combined with the erroneous advice on the
6  possible effects of going to trial, falls below the level of competence required of defense
7  attorneys."); *cf. United States v. Signori*, 844 F.2d 635, 638 (9th Cir. 1988) ("A defendant who
8  pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character
9  of the guilty plea by showing that the advice he received from counsel was not within the range
10 of competence demanded of attorneys in criminal cases.").

11         Defendant has the burden to show that her attorney failed to properly inform her of the
12 risks and benefits of rejecting the plea and proceeding to trial.  *See Hill v. Lockhart*, 474 U.S.
13 52, 57, 106 S.Ct. 366 (1985).  "Counsel cannot be required to accurately predict what the jury
14 or court might find, but he can be required to give the defendant the tools he needs to make an
15 intelligent decision."  *Turner*, 281 F.3d at 881; *see also Iaea,* 800 F.2d at 865.  ("[C]ounsel
16 have a duty to supply criminal defendants with necessary and accurate information. Though,
17 a mere inaccurate prediction, standing alone, would not constitute ineffective assistance.").
18 The facts in this case establish that Defense counsel informed Defendant of the 48 month plea
19 offer.  Defense counsel repeatedly assured Defendant that she would win at trial describing her
20 case as a "slam dunk", a "sure thing", and the 48 month offer as "ridiculous."  In the initial
21 Section 2255 motion filed on April 20, 2009, Defendant set forth facts, under penalty of
22 perjury, establishing that her counsel told her that "the most" time she would serve in prison
23 even if she lost her case at trial was 120 months, that Defense counsel did not review with her
24 the level 38 Guidelines exposure, and that Defense counsel did not explain to her the
25 possibility that her denial at trial of all criminality might lead to the Court's refusal to award
26 her role-reduction and a lesser sentence.  Defendant's mother stated in her declaration that
27 "[Defense counsel] explained that the most [Defendant] could get would be ten years." (Doc.
28 # 66 at 10).  Fernando Tafoya, a personal friend of the Defendant, stated under penalty of

1  perjury, that "[Defense counsel] also told [him after trial] that he felt [Defendant's] maximum
2  'exposure' in the case was, in any event, only ten years imprisonment." *Id.* at 25.

3        The Court concludes that the evidence in the record that the Defendant was not advised
4  by Defense counsel of the maximum sentence or the application of the guideline range is
5  uncontradicted and corroborated.   There is no evidence in the record that Defense counsel
6  informed Defendant of the Guideline range of 235-293 months based upon drug quantity or
7  the maximum sentence of life imprisonment.  The Court concludes that the evidence submitted
8  by the Defendant is credible in light of all of the facts in the record.  The Court of Appeals has
9  "recognized that where the issue of credibility can be conclusively decided on the basis of
10 documentary and testimony and evidence in the record, no evidentiary hearing is required."
11 *Shah v. United States*, 878 F.2d 1156, 1159 (9th Cir. 1989) (internal quotations omitted).
12 Plaintiff United States had three opportunities to submit any relevant evidence to the contrary
13 and has not submitted any evidence.  Under these unique and undisputed facts, the Court finds
14 that the Defendant was advised by her counsel that her maximum sentence exposure was 120
15 months and that the Defendant was not advised of the maximum sentence of life imprisonment
16 or the application of the relevant advisory guideline range.   The Court concludes that the
17 maximum sentence and advisory guideline application are material facts necessary for a
18 knowing and intelligent decision to reject the plea offer and proceed to trial.

19       In addition to the misadvice of counsel regarding the risks and benefits of rejecting the
20 plea offer and proceeding to trial, Defendant further asserts that her decision to reject the plea
21 offer was coerced by the threat of Defense counsel to withdraw if she accepted the plea offer
22 which required a "safety valve" debrief.   Defendant stated, under penalty of perjury, that
23 Defense counsel told her that the plea offer contemplated a debrief pursuant to the "safety
24 valve" and "if they don't believe what you say, you will get more time than ever."  Referring
25 to the plea offer, Defense counsel told the Defendant, "if you want to do this, you'll have to
26 get a new lawyer" because "I don't represent rats."  (Doc.# 59 at 12).  Defendant stated that
27 her counsel never informed her that she would be eligible for appointment of a replacement
28 counsel.  Defendant stated that she believed she would be without any lawyer if she accepted

1  the plea offer and cooperated with the Government or that her counsel's representation would
2  be grudging and not in her interest.  Defendant's mother stated: "Defense counsel expressed
3  a belief that my daughter should reject the deal because she was certain to win at trial, and
4  therefore should not have to do *any* time.  He further explained that the most she could get
5  would be ten years.  At this point, my daughter added that the deal would force her to be an
6  informant (the word used was 'rat'), and that [defense counsel] would not represent 'rats.'  At
7  this point, [Defense counsel] nodded and said 'yes that is true.'" (Doc. # 66 at 10).

8  In *Nehad v. Mukasey*, 535 F.3d 962 (9th Cir. 2008), the Court of Appeals stated that
9  "[i]t is widely held that counsel's threatening to withdraw unless the defendant agrees to plead
10 guilty can render the plea involuntary." *Id.* at 971 (citing *Iaea v. Sunn*, 800 F.2d at 866-68).
11 In *Iaea*, the Court of Appeals explained that "[t]he plea is void if it is 'induced by promises
12 or threats which deprive it of the nature of a voluntary act.'" 800 F.2d at 867 (quoting
13 *Machibroda v. United States,* 368 U.S. 487, 493, 82 S.Ct. 510, 513 (1972)).  In this case, the
14 evidence of the threat by Defense counsel to withdraw if Defendant accepted the plea offer is
15 uncontradicted, corroborated, and credible in light of all of the facts in the record.  The Court
16 concludes that the evidence that Defendant's decision to reject the plea offer was coerced by
17 the threat of her counsel to withdraw supports the Defendant's claim that the representation
18 of her court-appointed counsel fell below the level of competence required of defense
19 attorneys.  There is no evidence that the coercive effect of this threat was mitigated by
20 informing the Defendant that new counsel would be appointed if she chose to accept the plea
21 offer.

22 Based upon the undisputed facts in the record, the Court concludes that Defense counsel
23 did not fulfill the duty to supply Defendant with necessary and accurate information, and that
24 the failure to fulfill this duty deprived Defendant of the "right to make a reasonably informed
25 decision whether to accept the plea offer." *Turner*, 281 F.3d at 880.  When viewed together
26 with the exaggerated optimism of the benefits of going to trial, the Court concludes that the
27 misadvice regarding the risks (the maximum sentence exposure), and the threat of counsel to
28 withdraw if Defendant accepted the plea offer, falls below the objective standard of

reasonableness required of attorneys in criminal cases. Even applying the strong presumption of competence, the Court concludes that the Defendant was deprived by the specific misadvice of counsel of her "right to make a reasonably informed decision whether to accept a plea offer." *Id.* at 880.

**Prejudice**

To prevail on the prejudice prong of a claim of ineffective assistance of counsel, the defendant must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 69; *see also Hill,* 474 U.S. at 59. In this case, Defendant has stated that she "was prepared to accept the offer if her counsel advised her to do so." (Doc. # 59 at 11). There are no facts in the record to support a conclusion to the contrary. The Government does not claim any lack of prejudice or assert that the results of the proceedings would not have been different if Defendant had been reasonably informed of the benefits of going to trial and accurately informed of the risks of going to trial. The Court concludes that the record in this case is adequate to conclusively show that there is a reasonable probability that the results of the proceedings would have been different but for the errors and omissions of Defense counsel.

**Appropriate Remedy**

"When ineffective assistance of counsel has deprived a defendant of a plea bargain, a court may choose to vacate the conviction and return the parties to the plea bargaining stage. A court may also order the government to reinstate its original plea offer to the defendant or release the defendant within a reasonable amount of time. In deciding the proper remedy, a court must consider the unique facts and circumstances of the particular case." *Riggs v. Airman*, 399 F.3d 1179, 1184 (9th Cir. 2005) (citation omitted).

"Conceptually, any habeas remedy 'should put the defendant back in the position he would have been in if the Sixth Amendment violation never occurred,' and in some circumstances granting a new trial is not the appropriate remedy to that end." *Nunez v. Mueller*, 350 F.3d 1045, 1058 (9th Cir. 2003) (quoting *United States v. Baylock*, 20 F.3d 1458,

1468 (9th Cir. 1994)). "[W]here ... the defendant was deprived of the opportunity to accept a plea offer, putting him in the position he was in prior to the Sixth Amendment violation ordinarily will involve reinstating the original plea offer." *Blaylock,* 20 F.3d at 1468. The Court concludes that Defendant should be put in a position to make a reasonably informed decision whether to accept the original 48 months plea offer with the necessary and accurate information.

## CONCLUSION

Based upon the undisputed facts in the record, the court concludes that the advice of Defense counsel during the plea negotiations was not "within the range of competence demanded of attorneys in criminal cases." *McMann*, 397 U.S. at 771. There is a reasonable probability that results of the proceedings would have been different but for the errors and omissions of Defense counsel.

IT IS HEREBY ORDERED that the motion to vacate, correct or set aside sentence pursuant to 28 U.S.C. Section 2255 filed by Defendant Melissa Resendez-Ceballos (Doc. # 59) is granted. The Judgment of January 3, 2007 (Doc. # 46) and the verdict of the jury (Doc. # 38) are vacated. Plaintiff United States is ordered to reinstate the original plea offer for a reasonable period of time. The Court will hold a status hearing on January 8, 2010 at 2 p.m. to determine further proceedings.

DATED: December 2, 2009

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge